THE PEOPLE OF THE STATE OF NEW YORK ex rel. LINDLEY M. GARRISON, as Receiver of THE NASSAU ELECTRIC RAILROAD COMPANY, Appellant, *v.* LEWIS NIXON, Constituting the Public Service Commission of the State of New York, First District, et al., Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LINDLEY M. GARRISON, as Receiver of BROOKLYN, QUEENS COUNTY AND SUBURBAN RAILROAD COMPANY, Appellant, *v.* LEWIS NIXON, Constituting the Public Service Commission of the State of New York, First District, et al., Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LINDLEY M. GARRISON, as Receiver of The CONEY ISLAND AND BROOKLYN RAILROAD COMPANY, Appellant, *v.* LEWIS NIXON, Constituting the Public Service Commission of the State of New York, First District, et al., Respondents.

*Public service commission — jurisdiction to authorize increase in rates of fare upon street surface railways.*

*People ex rel. Garrison* v. *Nixon,* 191 App. Div. 945 (3 cases), affirmed.

(Argued May 3, 1920; decided July 7, 1920.)

APPEAL, in each of the above-entitled proceedings, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 12, 1920, which dismissed a writ of certiorari and affirmed the proceedings of the public service commission denying an application, by relators, for permission to increase the rate of fare for transportation of passengers on a street surface railway.

*John G. Milburn, Lindley M. Garrison* and *Carl M. Owen* for appellant.

*Terence Farley* and *George H. Stover* for Public Service Commission, respondent.

*John P. O'Brien, Corporation Counsel (Edgar J. Kohler* of counsel), for city of New York, respondent.

*William N. Dykman* and *William D. Guthrie* for Brooklyn City Railroad Company, *amicus curiæ.*

*Henry L. Stimson* for receiver of New York Railways Company, *amicus curiæ.*

*Alfred A. Cook* for trustee of Interborough Consolidated Corporation, *amicus curiæ.*

*Per Curiam.* The petitions of the appellants to the public service commission requested an order authorizing the appellant to charge and collect a cash rate of fare of eight cents for the transportation of passengers " between any two points of any of said lines of railroad " of the company. We construe this as an application for an increase of fare on the entire route and so the record shows that it was construed by counsel.

We think that the following classes of franchises fall outside the scope of our decisions in *Matter of Application of the City of Niagara Falls* v. *Public Service Commission of the State of New York for the Second District* and the *International Railway Company* (decided herewith) (229 N. Y. 333); *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244):

1. All franchises granted directly by the legislature.

2. All franchises granted by municipal authorities prior to January 1, 1875. Such franchises are subject to proper legislative regulation.

3. All franchises granted by municipal authorities subsequent to the passage of the Public Service Commissions Law on July 1, 1907.

4. The following franchises granted between January 1, 1875 and July 1, 1907:

a. The franchise granted in and by the consent of the common council of the city of Brooklyn to the Atlantic Avenue Railroad Company, dated March 13, 1882 (now a part of the Nassau Electric Railroad Company).

b. The franchise granted in and by the consent of the common council of the city of Brooklyn to the Prospect Park and Coney Island Railroad dated December 21, 1885, consenting to the construction of a line on Park avenue and other streets in Brooklyn.

c. The franchise granted in and by the consent of the common council of the city of Brooklyn to the Nassau

Electric Railroad Company, dated June 19, 1893, covering a number of lines as therein stated.

The orders, therefore, should be affirmed without prejudice to the right of the relator to make separate applications as to the franchises which come within the jurisdiction of the public service commission as herein indicated.

CRANE, J. (dissenting). The Nassau Electric Railroad Company was incorporated March 13, 1893, under the General Railroad Law (Laws of 1890, chap. 565, as amended). It thereafter constructed, consent from the proper authorities having been obtained, street surface railroads in certain public streets in what is now the city of Greater New York. The last consent was obtained on April 3, 1916, from the board of estimate and apportionment of the city of New York. It also acquired other franchises and rights by merging other companies whose franchises had been acquired prior to 1875 and also between 1875 and 1890. Some of these franchises had no provision as to a rate of fare, while others did. These railroads are now being operated by the relator as receiver.

On the 30th of March, 1920, as such receiver, he made an application to the public service commission of the first district for leave to increase from five to eight cents the cash rate of fare charged and collected for transportation upon the lines of such railroads. The application was in writing and set forth that a fare of five cents was insufficient to yield a reasonable compensation for the services rendered, and was, in fact, unjust, unreasonable and confiscatory. The commission fixed the following day as the time when a hearing upon the application would be had. The matter came on for a hearing at the time fixed, together with similar applications by the same relator as receiver of the Brooklyn, Queens County and Suburban Railroad Company, and of the Coney Island and Brooklyn Railroad Company. The commission ruled, without taking any evidence in support of the facts alleged in the relator's petition, that the commission had

37

no power or jurisdiction to authorize an increase in fares upon the railroads in question. An order was thereupon made denying the application and· dismissing the proceeding, " solely upon the ground that the Commission has no power or jurisdiction upon the facts alleged in said complaint and application to determine the questions presented, or to grant the prayer of said complaint and application, or to increase the rates, fares or charges charged or chargeable on said lines of railroad, and not upon the merits." The relator thereupon obtained a writ of certiorari to the Appellate Division to review the decision of the public service commission. The city of New York, by consent, obtained an order from the Special Term of the Supreme Court, permitting it to intervene and make it an additional party defendant. The Appellate Division, after hearing the appeal, dismissed the writ, affirmed the proceeding of the public service commission as matter of law, and granted leave to appeal, certifying in its opinion a question of law was involved which ought to be reviewed by this court.

The sole question presented by the appeal is whether the commission had power to entertain and pass upon the merits of the application.

The difficulty in these surface railroad fare cases is the interpretation of article 3, section 18, of the New York State Constitution which reads: " But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the Appellate Division of ·the Supreme Court, in ·the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed

by the court, may be taken in lieu of the consent of the property owners."

It is pressed with much force that by reason of this provision of the Constitution the consent of the city may be given upon such terms and conditions as it sees fit to impose and that these cannot be modified or interfered with by the state legislature in the exercise of its police power. In other words, it is claimed that the police power over street surface corporations has been limited by the Constitution in so far as the city has acted in granting a franchise. In considering this matter it will not do to emphasize the importance of a condition fixing. carfare rates over any other condition that the city may impose. The question is not one of degree, but one of power. It will be conceded that generally a state has power to limit the amount of charges by railroad companies for the transportation of persons and that this power of regulation is a power of government continuing in its nature and if it can be bargained away at all it can only be by words of positive grant or by something which is in law equivalent. (*Railroad Commission Cases,* 116 U. S. 307, 325.)

The power to regulate fares is one of the police powers of the state legislature. (*Buffalo East Side Railroad Co.* v. *Buffalo Street Railroad Co.,* 111 N. Y. 132; *Home Telephone & Telegraph Co.* v. *City of Los Angeles,* 211 U. S. 265.)

The condition annexed to the consent or franchise fixing the rate of fare to be charged is no different, therefore, so far as this question is concerned, than a condition fixing the kind of rails or cars that are to be used, the number of cars to be operated or the speed and manner of operation. If the legislature in the exercise of its police power cannot, because of the State Constitution, regulate the fares, it cannot regulate or control any other condition which may have been imposed by the municipality.

The legislature, therefore, either has all of its police powers reserved to it or it has no power whatever in relation to the terms and conditions of a franchise granted to a street surface railroad. We cannot say that the legislature can deal with some matters which to-day seem

unimportant but is unable to touch the question of fares because, for the time being, it appears to be a matter of great public interest. We are here dealing with a question of power as before stated and the effect of its use has no bearing upon the determination.

The provisions of the Constitution, as above quoted, were carried over from the law as it theretofore existed upon the statute books of the state. Like consent was required from the local authorities before a railroad could be constructed in a city. By placing these enactments in the Constitution certainly no different meaning was given to them. The effect simply was that the right upon the part of the local authorities to consent or to refuse consent to the building of a railroad could not be taken away by the state legislature. But the meaning and purpose of this consent was no different from that which it had when embodied in the laws instead of the Constitution. Rather it must be assumed that article 3, section 18, has the same meaning which the decisions gave to it when embodied in the law. Language means the same whether used in a statute or a Constitution.

In *City of Rochester* v. *Rochester Railway Co.* (182 N. Y. 99) it was said that the General Railroad Act gave plenary power to any railroad company incorporated under it to lay out and construct its road between the termini mentioned in the articles of association, except that subdivision 5 of section 28 provided that the statute should not be construed to authorize the construction of any railroad upon, along or across any streets in any city without the assent of the corporation of the city. It was, therefore, necessary for the construction of any street railroad within a city that the comapny should obtain the consent of the city to the use of the street.

Certain conditions had been annexed to the consent given by the city of Rochester to the Rochester City and Brighton Railroad Company. As to these conditions the court said: " on the other hand it is equally clear that under the power given by the General Railroad Act to the municipality to consent to the construction of such a

road, the municipality could in no degree contract away or limit the taxing power or the police power possessed by the legislature. (*People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Sioux City St. Ry. Co.* v. *Sioux City supra.* See also *Worcester* v. *Worcester St. Ry. Co.*, *supra.*) * * * In the exercise of the police power the legislature could prescribe the maximum fares to be charged by the company (*Buffalo E. S. R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *Railroad Commission Cases*, 116 U. S. 307; *Norfolk & Western R. R. Co.* v. *Pendleton*, 156 U. S. 667), and such right was reserved by section 23 of the statute subject to the qualification that the fare should not be reduced so that the net returns to the company should be less than ten per cent on the sum actually invested. So equally in the exercise of the taxing power it could relieve the company from the burden of any provisions imposed on it by the ordinance of the common council in 1862. (*Worcester* v. *Worcester St. Ry. Co.*, *supra.*) Neither of these powers was necessarily to be exercised once for all. Unless contracted away the right to their exercise was continuous and statutes passed under them could be varied or altered from time to time." (p. 115.)

Under the law as it stood prior to the adoption of article 3, section 18, the city in giving its consent could not impose such terms and conditions as to take from the legislature its regulatory or police power to fix fares. When, therefore, this enactment was carried over into the Constitution wherein and wherefor did it receive any other or additional meaning? The city, after 1875 and under this constitutional provision, could consent or withhold its consent, but having given its consent it could not impose any conditions which took any of the police powers away from the legislature. In other words, with the exception of this limit of consent the legislature after 1875 possessed all the powers over street surface railroads which it theretofore had.

This is what the court said in *Matter of Thirty-fourth Street Railroad Co.* (102 N. Y. 343, 348). In the opinion will be found the following: " The legislature in dealing

with the subject of street railways, was under certain restrictions imposed by article 3, section 18, of the Constitution.   *   *   *   The plain purpose of the Constitution in requiring the consent of the local authorities and of property owners to the construction of a street railroad, was the protection of public and private interests against hostile and injurious legislation, and to prevent the appropriation of highways to railroad uses by legislative grant, without consulting the interests of the locality.   *   *   * But the Constitution, neither by express language nor by implication abridges the legislative power over the subject outside of the matters particularly enumerated.   It needs no citation of authorities to sustain the postulate, that except as restrained by the Constitution, the legislative power is untrammeled and supreme, and that a constitutional provision which withdraws from the cognizance of the legislature a particular subject, or which qualifies or regulates the exercise of legislative power in respect to a particular incident of that subject, leaves all other matters and incidents under its control.   Nothing is subtracted from the sum of legislative power, except that which is expressly or by necessary implication withdrawn. The legislature is prohibited from granting a franchise to construct a street railroad, except upon certain specified conditions.   But it is not prohibited from annexing further conditions not inconsistent therewith, and whether other conditions are necessary or proper, is a matter resting in the wisdom and discretion of the legislature."

And if this were not so what dire results would follow. If, as claimed, a city could impose any and as many conditions as it pleased and these were removed from all legislative control the police power or the power of regulation would be forever gone.   The legislature could not act and certainly the city could not alter its terms and conditions at will.   The police power unless delegated does not rest with municipalities.   We would have here the anomalous situation of the reserve force called the police power inherent in government for its preservation and for the safety and morality of society in abeyance or

suspended as to street surface railroads. One reason why the police power has never been defined with marked limitations is because none can foresee the future, and yet all realize that changes will come which must be dealt with.

Again, the word "consent," as used in the Constitution, . must mean the same for the city as it does for the property owner. Can the property owner in granting his consent also annex terms and conditions, and if not, why not? If he refuses consent and it is passed on to commissioners appointed by the court whose action is thereby taken in lieu of the property owner's consent, can these commissioners also annex terms and conditions to their determination? If not, why not? The consent of the property owner or his representative certainly is as vital as that of the local authorities.

The fact is that until these present cases arose regarding increased fares no one seriously questioned the power of the legislature to limit or restrict the city in granting its consent to the construction of a railroad. Two decades ago or more the serious question with reference to railroad matters was whether the municipalities through their boards of aldermen or common councils and the like could or should give away valuable street franchises without proper compensation or return to the people. There was then enacted section 93 of chapter 565 of the Laws of 1890, which later became section 173 of the Railroad Law, Laws of 1910, chapter 481. These provisions directly touched the power and the authority of the city to consent and limited the right to a narrow sphere. In substance the consent of the local authorities was conditioned upon the franchise being sold at public auction to the bidder who would agree to give the city the largest percentage per annum of the gross receipts of the corporation and a bond or undertaking for the fulfillment of its agreement. Notice of the time and place of the sale was required to be published by the local authorities for at least three successive weeks in two daily newspapers. Other conditions were also enumerated.

As to the city of New York, section 73 of the Greater

New York charter of 1897, constituting chapter 378 of the Laws of 1897, and section 73 of the present charter, as revised in 1901, provide that no right to use the streets shall be granted to any corporation for a longer period than twenty-five years and that at the end of that time the rights and property of the corporation shall revert to the city under certain limitations.

I cannot find that these provisions, solely enacted for the benefit of the public, have ever been questioned as to their constitutionality. On the contrary, it has been held by this court that the legislature had the right either under its police powers or as dealing with its creatures and agent, the municipal corporation, to place upon its consent under the Constitution, restrictions and limitations. (*People ex rel. West Side Street Railway Co.* v. *Barnard*, 110 N. Y. 548; *Beekman* v. *Third Avenue Railroad Co.*, 153 N. Y, 144; *People ex rel. South Shore Traction Co.* v. *Willcox*, 196 N. Y. 212.)

Now in these days the much agitated question confronting us is the power of the legislature to raise the street railroad carfares. If the legislature had power to limit the consent of a city to the highest bidder at public sale it surely has power to provide any other condition not inconsistent with the constitutional mandate. Thus it can say that the consent may be conditioned upon a rate of fare not to exceed five cents, but that future charges will be under the control and regulation of the legislature. This is exactly what has been done regarding all the franchises here involved.

Having the right to limit the conditions upon which the city shall give its consent or its franchise, 'who is to say other than the legislature what those limitations shall be? Once conceding that the police power has not been taken away by article 3, section 18, of the Constitution, and that the legislature in the interests of the public welfare may control the city in the exercise of its consent or the right to give a franchise, then that power extends to the regulating of fares as well as any other condition that the city may seek to impose.

As stated before, either the consent of the city is beyond legislative regulation or else it is subject to all the powers which the legislature may exercise over municipalities or within its police power not destructive of the right to consent or to refuse consent.

Prior to the granting of any of the franchises involved in any of these cases the legislature had provided conditions and terms regarding railroad fares which were equally as binding as the provisions regarding the sale of the franchises at public auction to the highest bidder.

Section 101 of chapter 565 of the Laws of 1890, which with an addition became section 181 of the Railroad Law, chapter 481 of the Laws of 1910, not only fixed the rate of fare at five cents, but provided as follows: " The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article; and the Public Service Commission shall possess the same power, to be exercised as prescribed in the Public Service Commissions Law."

By section 49 of the Public Service Commissions Law the commission may determine the just and reasonable rates and fares to be charged by a railroad company.

The consents, therefore, given to all these railroads were subject to these laws and the power of the legislature through the public service commission to regulate the rate of fare. This is the view taken in other states. (*City of Chicago* v. *O'Connell*, 278 Ill. 591; *St. Louis* v. *Public Service Commission*, 207 S. W. Rep. 799; *Kansas City* v. *Public Service Commission*, 210 S. W. Rep. 381; *Salt Lake City* v. *Utah Light & T. Co.*, 173 Pac. Rep. 556; *Virginia-Western Power Co.* v. *Commonwealth ex rel. City of Clifton Forge*, 99 S. E. Rep. 723; *Chicago & Alton Railroad Co.* v. *Tranbarger*, 238 U. S. 67.)

My conclusion is that when the city granted the franchises to the railroads here in question they were subject to the laws above stated regarding the power of the legislature and the public service commission to regulate the fares and that any conditions named by the city were

subject to this power. The public service commission should not have denied the application of the relator herein for want of power.

I do not think this right of the public service commission to regulate fares rests upon that clause of the franchises making the Railroad Law a part thereof. The franchises are granted upon condition that the railroad shall comply with the provisions of the Railroad Law which includes section 181 above referred to. The franchises in the *Quinby* case also contain a similar provision. They were conditioned upon compliance with article 4, chapter 39 of the General Laws of the state of New York of 1892. This law contained section 101 which later became section 181 of the Railroad Law. As above stated, section 101 reserved the right in the legislature to regulate fares. In deciding the *Quinby* case we did not consider this of sufficient importance to control our decision. If the franchises in these cases now before us had made no reference whatever to the Railroad Law, yet the police power of the legislature, in my judgment, would have been the same and the Railroad Law would impliedly be read into the franchises and become a part thereof. I rest my conclusion upon the reserve police power in the legislature to regulate and control railroad fares which power has not been bargained away even if it could be (*Chicago & Alton Railroad Co.* v. *Tranbarger, supra*) by any act of the state.

The city, of course, has the right to annex terms and conditions to its consent to the construction of a railroad, and these terms and conditions are binding upon the parties. (*Public Service Commission* v. *Westchester Street Railroad Co.*, 206 N. Y. 209, 216.) We are here dealing, however, with the power of the state over such terms and conditions, which is another matter altogether.

It is said that the *Quinby* case (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244) is contrary to what is here stated. The *Quinby* case was decided upon special facts and circumstances which make it a law unto itself. It apparently has not always been fully understood.

These special facts were stated in the case of *People ex rel. Village of South Glens Falls* v. *Public Service Commission* (225 N. Y. 216). Judge McLAUGHLIN has again amplified them in his opinion in the case of *Matter of City of Niagara Falls* v. *International Railway Company*, decided herewith. When the legislature enacted section 173 of the Railroad Law it especially excepted the city of Rochester. In the charter of the city of Rochester, chapter 359 of the Laws of 1915, section 636, subdivision 2, it fixed the fare of the street surface railroads at five cents and further provided for a hearing before the public service commission, in but one instance, and that where intersecting railroads could not agree upon the method of division between them of fares collected. We were, therefore, justified in holding that the legislature had dealt especially, for reasons best known to itself, with the railroads of Rochester and had excepted them from the general laws affecting other street surface railroads.

The order of the Appellate Division should be reversed, the determination of the public service commission annulled, and the proceeding remitted to the commission to determine the question upon the merits, with costs to the appellant.

HISCOCK, Ch. J., and ELKUS, J., concur with *per curiam* opinion; HOGAN, J., votes for plain affirmance; CARDOZO, J., dissents from so much of decision as holds that muncipal franchises granted prior to January 1, 1875, do not come within the scope of the decision in *Matter of Quinby* (223 N. Y. 244); and CRANE, J., who dissents in opinion; CHASE and McLAUGHLIN, JJ., dissent on opinion of CRANE, J., and on dissenting opinion of McLAUGHLIN, J., in *In re Application of City of Niagara Falls* v. *Public Service Commission, Second District*, decided herewith. Said last judges, however, concur in so much of the decision as provides that the present decision shall be without prejudice to the right of the relator to make further application as in said decision provided if so advised.

Order affirmed, etc.