Matter of the Application of JAMES K. O'CONNOR, Individually and as Mayor of the City of Utica, and the CITY OF UTICA, for a Writ of Prohibition, Relators, *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE SECOND DISTRICT, and NEW YORK STATE RAILWAYS, Defendants.

(Supreme Court, Schoharie Special Term, February, 1921.)

Writ of prohibition — city of Utica — street railways — increase of fare — public service commission — franchises —when motion for alternative writ of prohibition denied.

> The New York State Railways, a domestic corporation operating street surface railroads, among other places, in the city of Utica, having instituted a proceeding before the public service commission for permission to increase its rate of fare, the city, as a basis of demand for an alternative writ of prohibition commanding said corporation and the public service commission to desist from further proceedings in the matter, set up as a bar to the jurisdiction of the public service commission, sixteen franchises granted by the city between May 6, 1886, and January 18, 1907, to said corporation, or its predecessors in interest, all of which franchises were without limitation except that the railway corporation would obey the Railroad Law, including any changes in the rate of fare made by the legislature or its delegated agent, the public service commission. *Held,* that the motion for the alternative writ of prohibition must be denied.

APPLICATION for an alternative writ of prohibition directed to the public service commission of the state of New York for the second district, and the New York State Railways, commanding them and each of them to desist and refrain from any further proceedings in the matter of the application of the New York State Railways, now pending before the said public

service commission, for permission to increase its rate of fare to ten cents in the city of Utica.

Fred F. Scanlan, corporation counsel, for relator.

Kernan & Kernan (Warnick J. Kernan, of counsel), for defendant New York State Railways.

No appearance for public service commission.

NICHOLS, J. The New York State Railways is a domestic corporation operating street surface railroads, among other places, in the city of Utica, N. Y. Between May 6, 1886 and January 18, 1907, there was granted to it or to its predecessors in interest by the city of Utica, sixteen franchises which are now set up as a bar to the jurisdiction of the public service commission in the proceeding which has been instituted by the New York State Railways for an increased rate of fare and are made the basis of the demand of said city for an alternative writ of prohibition directed to the public service commission of the second district and the New York State Railways, commanding them and each of them to desist and refrain from any further proceedings in the matter of the application of the said New York State Railways for permission to increase its rate of fare.

Six of the aforesaid franchises contain a statement incorporated therein either to the effect that the application is granted and franchise given, " upon the express condition that the provisions pertinent thereto of the Act of the Legislature of the State of New York, passed May 6th, 1884 entitled 'An Act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages,' and all acts amendatory thereof or supplemental thereto be in all things com-

plied with " or that the consent " is given pursuant to the provisions of chapter 252 of the Laws of 1884 * * * and the acts amendatory thereof .* * *.'' Hereinafter in this opinion, these six franchises will be referred to as " B " franchises, the term " B " being used for convenience of reference to said franchises and for another reason which will appear later in this opinion.

Ten of the said sixteen franchises mentioned contain a statement that the said consent is given on the following express conditions, to wit: " That the provisions of article IV of the Railroad Law pertinent thereto shall be complied with,'' which said ten franchises will be hereinafter referred to as " C " franchises for convenience of reference thereto and for another reason which will hereinafter appear.

Chapter 252 of the Laws of 1884, which was an act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages, provided in section 13 thereof that " No company or corporation incorporated under, or constructing and operating a railroad * * * shall charge any passenger more than five cents for one continuous ride * * *'' and section 4 of said act provided " The consent of the local authorities shall in all cases be applied for in writing, and when granted shall be upon the express condition that the provisions of this act pertinent thereto shall be complied with, and shall be filed in the office of the county clerk of the county in which said railroad is located.'' Section 19 of said act provides, " The legislature may at any time alter, amend or repeal this act.''

Chapter 65 of the Laws of 1886 (which went into effect March 22, 1886, before any of the franchises herein were granted) amended chapter 252 of the

Laws of 1884 by the inclusion of a provision to the effect that: '' The Legislature expressly reserves the right to regulate and reduce the rate of fare on such railroad or railway;'' and afterwards, the General Railroad Law (Laws of 1890, chapter 565), by section 101 provided: '' The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter (chapter 252, Laws of 1884) or under the provisions of this article.''

Section 5, subdivision 3 of the Public Service Commissions Law provides: '' 3. All jurisdiction, supervision, powers and duties under this chapter not specifically granted to the public service commission of the first district shall be vested in, and be exercised by, the public service commission of the second district, including the regulation and control of all transportation of persons or property, and the instrumentalities connected with such transportation, on any railroad other than a street railroad from a point within either district to a point within the other district.''

Section 181 of the Railroad Law (Cons. Laws, chap. 49), so far as material here, is as follows: '' No corporation constructing and operating a railroad under the provisions of this article, or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village. * * * The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter

or under the provisions of this article; and the public service commission shall possess the same power, to be exercised as prescribed in the public service commissions law.''

Subdivision 1 of section 49 of the Public Service Commissions Law is in part as follows:

'' § 49. Rates and service to be fixed by the commission. 1. Whenever either commission shall be of the opinion, after a hearing had upon its own motion or upon a complaint, that the rates, fares or charges demanded, exacted, charged or collected by any common carrier, railroad corporation or street railroad corporation subject to its jurisdiction for the transportation of persons or property within the state, or that the regulations or practices of such common carrier, railroad corporation or street railroad corporation affecting such rates are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of any provision of law, or that the maximum rates, fares or charges, chargeable by any such common carrier, railroad or street railroad corporation are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall with due regard among other things to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, notwithstanding that a higher rate, fare or charge has been heretofore authorized by statute, and shall fix the same by order to be served upon all common carriers, railroad corporations, or

street railroad corporations by whom such rates, fares and charges are thereafter to be observed.''

In *Matter of International Railway Company* v. *Public Service Commission,* 226 N. Y. 479, the court says: '' The power to regulate rates is the power to increase them if inadequate just as truly as it is the power to reduce them if excessive.'' The court saying, at page 478: '' This is a case where the local authorities, in imposing a condition, have consented that the legislature may change it, and have thus renounced the right of forfeiture or revocation that might otherwise be theirs. ' Nothing in this contract contained shall be construed to prevent the legislature from regulating the fares of said companies, or either of them.' In the light of this provision, amendment by legislation must be held to have been as much within the contemplation of the parties as amendment by agreement,'' and again at page 479: '' The situation then, is this: Municipality and railroad have joined in the declaration that the rate fixed by their agreement shall be, not final, but provisional. It is to be subject, in case of need, to re-examination and readjustment by the agents of the state. The need that was foreseen as possible, has arisen. In upholding the jurisdiction of the commission to deal with it, we do not override the conditions of the franchise. We heed and enforce them. There are times when the police power modifies a contract in spite of the intention of those who have contracted. Here its action is in aid of their intention. The covenant which limits rates is a condition of the consent, but only in equal measure with the covenant preserving and defining the power of amendment. So far as the power of the commission is concerned, the result is the same as if no condition had been imposed at all.''

All of the '' B '' franchises were granted between

May 6, 1886, and October 11, 1889; while the " C " franchises were all granted between the 4th day of October, 1895, and January 18, 1907.  So that all the franchises " B " and " C " were granted between January 1, 1875, and July 1, 1907.

In *People ex rel. Garrison* v. *Nixon,* 229 N. Y. 575, 586, Crane J., in a dissenting opinion, says: " I do not think this right of the public service commission to regulate fares rests upon that clause of the franchises making the Railroad Law (Consol. Laws, C. 49) a part thereof.  The franchises are granted upon condition that the railroad shall comply with the provisions of the Railroad Law which includes section 181 above referred to.  The franchises in the *Quinby* case also contain a similar provision.  They were conditioned upon compliance with article 4, chapter 39 of the General Laws of the state of New York of 1892.  This law contained section 101 which later became section 181 of the Railroad Law.  As above stated, section 101 reserved the right in the legislature to regulate fares. In deciding the *Quinby* case we did not consider this of sufficient importance to control our decision."

The franchises in *Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244, and in *Matter of City of Niagara Falls,* 229 id. 333, besides the provisions required by chapter 252 of the Laws of 1884 and section 101 of the Railroad Law, contained a further provision limiting the rate of fare to be charged, to the sum of five cents.

In *People ex rel. Garrison* v. *Nixon, supra,* the Court of Appeals in a *per curiam* opinion, among other things say: " We think that the following classes of franchises fall outside the scope of our decisions in *Matter of Application of the City of Niagara Falls* v. *Public Service Commission of the State of New York for the Second District* and the *International Railway*

*Company* (decided herewith), 229 N. Y. 333; *Matter of Quinby* v. *Public Service Commission,* 223 N. Y. 244. * * * 4. The following franchises granted between January 1, 1875 and July 1, 1907: (a) * * *. (b) The franchise granted in and by the consent of the common council of the city of Brooklyn to the Prospect Park and Coney Island Railroad dated December 21, 1885, consenting to the construction of a line on Park avenue and other streets in Brooklyn. (c) The franchise granted in and by the consent of the common council of the city of Brooklyn to the Nassau Electric Railroad Company, dated June 19, 1893, covering a number of lines as therein stated.''

In the exception (b) above quoted, the franchise contains the following condition: '' Provided that this consent is granted upon the express condition that the provisions of chapter 252 of the Laws of 1884, of the State of New York, entitled 'An Act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages,' pertinent thereto, shall be complied with; and shall be filed in the office of the county clerk of the county of Kings; provided, also, that this consent is given to said The Prospect Park and Coney Island Railroad Company subject to all the obligations, liabilities and payments and all the rights, privileges and franchises provided for by the aforesaid act.''

The language of the franchise of the exception '' (b) '' being substantially identical with the language of the franchises '' B '' and in the exception '' (c) '' above quoted, the language of the franchise is as follows: '' This consent is granted upon the express condition that the provisions of Article IV, of Chapter 565, of the Laws of 1890, and the Acts amendatory thereof, shall be complied with. This consent is

granted subject to all the obligations and liabilities and all the rights, privileges and franchises provided for by the aforesaid Act," being substantially the same provision as contained in the " C " franchises except that the words " and the Acts amendatory thereof " having been added to the exception (c).

While the Court of Appeals in *People ex rel. Garrison* v. *Nixon, supra,* only excepted three express franchises named therein, granted between January 1, 1875, and July 1, 1907, by a parity of reasoning it must follow that franchises like the " B " and " C " franchises hereinbefore mentioned and which contain no limitations except that the said railway corporation would obey the Railroad Law, including any changes in the rate of fare made by the legislature or its delegated agent, the public service commission, also fall within the exceptions " (b) " and " (c) " mentioned in *People ex rel. Garrison* v. *Nixon, supra.*

The motion for an alternative writ of prohibition must be denied, with ten dollars costs.

Motion denied, with ten dollars costs.