In the Matter of the Application of HARRY H. EVENS, Individually and as Comptroller of the City of Binghamton, and Another, Respondents, for a Writ of Prohibition against the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK FOR THE SECOND DISTRICT, Defendant, Impleaded with WILLIAM G. PHELPS, as Receiver of the BINGHAMTON RAILWAY COMPANY, Appellant.

Third Department, September 10, 1925.

Street railways — fares — power of Public Service Commission to increase fares — street railway formed by consolidation of seven other corporations — franchise granted by city to original roads provided for horse- or mule-drawn cars and fixed rate of fare — later, consent was given by municipality to change from horse or mule power to electric power, but fares were not fixed — abandonment of provisions as to motive power involved abandonment of provision as to fares — no city franchise exists as to rate of fare on present road — Public Service Commission has power to regulate.

The Public Service Commission has power to regulate the fares to be charged by the Binghamton Railway Company on the ground that the franchise granted by the city of Binghamton under which the Binghamton Railway Company is operated does not contain any provisions fixing or regulating the rate of fares, since it appears that the railway company was formed by the consolidation of seven similar lines; that the franchises granted by the city to the original roads provided for horse- or mule-drawn cars, limited the speed thereof, and fixed the rate of fare at five cents; that subsequently consent was given by the city of Binghamton to change the power from horse or mule power to electric power, but that the consent then given did not specify the rate of speed nor did it include any provisions as to fare.

The abandonment, under the consent given by the city to change the motive power from horse or mule power to electric power, involved the abandonment of the restriction as to fare by failing to provide therefor in the consent to the change of power, and, therefore, at the present time there is no city franchise existing that restricts the rate of fare, and so the Public Service Commission has the power to regulate the fare to be charged.

APPEAL by William G. Phelps, as receiver, etc., from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 17th day of December, 1919, directing that an absolute writ of prohibition issue against the Public Service Commission of the Second District.

*Curtiss, Keenan & Tuthill* [*Thomas J. Keenan* of counsel], for the appellant.

*William L. Lewis, Corporation Counsel,* for the respondents.

COCHRANE, P. J.:

The appellant, as receiver of the Binghamton Railway Company, operated a street railroad in the city of Binghamton. He made application to the Public Service Commission for permission to increase the rate of fare to be charged passengers. The order from which this appeal has been taken prohibits the Commission from considering such application because of a lack of jurisdiction. The questions to be determined are, *first,* whether the appellant is operating said railroad under franchises fixing the rate of fare, and, *second,* if the fare is so fixed by said franchises whether they are of such a nature as to render a change in the rate of fare beyond the jurisdiction of the Commission. In respect to the first question if there is no contractual relation between the city and the railroad corporation as to the rate of fare there is no doubt that the Commission has power to direct an increase.

. The Binghamton Railway Company was formed in the year 1901 as the result of the consolidation and merger of seven distinct corporations organized between the years 1868 and 1887, both inclusive, for the purpose of operating street car lines in the city of Binghamton. Another company incorporated in 1894 to operate a railroad outside the city forms part of said consolidation or merger but it has no bearing on the questions to be here considered. All of said seven corporations used horse or mule power from the time of their organization until various dates between 1888 and 1892 when the motive power was changed to electricity. The city in each instance consented to such change but in the consents thus given there was no reference to the rate of fare. We turn, therefore, to a consideration of the various franchises granted to the seven initial corporations the rights of which have been acquired by the appellant.

The first of these corporations was the Binghamton and Port Dickinson Railroad Company. It received its franchise directly from the Legislature, having been incorporated by a special act, chapter 501 of the Laws of 1868. This act contained a provision for charging each passenger " not to exceed five cents a mile " and also the following provision: " The cars to be used on said railroad shall be drawn by animal power." The act in such respects has not been amended or repealed. This franchise having been granted directly by the Legislature the rate of fare therein fixed is subject to regulation by the Public Service Commission. (*People ex rel. Garrison* v. *Nixon,* 229 N. Y. 575.)

The remaining six corporations all were incorporated under general laws and derived their franchises from the city. As we

shall see, the fare provisions in the franchises had reference only to cars propelled by horse or mule power.

The second corporation was the Washington Street and State Asylum Railroad Company, formed in 1871. The franchise to this company was granted by the city January 2, 1872, by an ordinance which was vitally important in respect to the fare question not only to this company but also to the subsequent companies. It provided in part as follows:

"Rate of Speed:

"Sec. 4. The cars to be used on the said road shall be drawn by horses or mules, only at a speed not exceeding the rate of seven miles an hour.

"Rate of Fare:

"Sec. 5. The company may charge and collect from any person on entering their cars or carriages, for riding any distance upon said road on the same continuous route, within the corporation limits, a sum not exceeding five cents; except that children under twelve years of age in going to and from school, shall not be charged by said company a sum exceeding four cents; and also except children under five years of age accompanied by parents or other persons having them in charge, such children to ride free.    *    *    *

"Restrictions:

"Sec. 23. The restrictions, requirements and regulations herein imposed upon said railroad company as the condition of this grant, shall be imposed and required of all railroad companies using horse or mule power, which may hereafter build, establish or maintain railroads in other of the streets in the said city, and for such purpose this resolution is *declared* to be 'an ordinance in relation to street railroads.'"

It is the contention of the respondents that section 5, relating to the rate of fare, applied to the situation after electricity supplanted horse power and that section 23 extended such application to all the companies subsequently deriving their franchises from the city. The appellant, on the other hand, contends that the rate of fare provision was only effective as long as the cars were drawn by horses or mules. When the ordinance was enacted the use of electricity in connection with street cars was unknown. The city did not and could not anticipate its use. Many of the restrictions and requirements of the ordinance are irrelevant and meaningless as applied to electric cars. Section 23 imposes its restrictions and requirements on companies *using horse or mule power.* The reasonable inference is that only such power was contemplated and that the ordinance was intended to apply only to such companies as

used and while they used horse or mule power. A change of power could only be made with the consent of the city. The city consented to the use of electricity. This change involved a change in the style of cars, the construction of a power house, a change in the method of operation, the maintenance of transmission poles and wires, and different equipment. The ordinance contemplated nothing of the kind but only the use of horse-drawn cars. In *Westinghouse Electric & Mfg. Co.* v. *Binghamton Railway Co.* (255 Fed. 378) the court had under consideration this same ordinance. What was there said by Judge RAY on this question at pages 394 and 395 is so apt and comprehensive that we repeat it here: " I think it very plain that this ordinance of the city showed its policy and purpose in regard to street railroads within the city then and thereby authorized, or that might thereafter be authorized, viz., to provide for the use of horse or mule power in moving cars thereon and exclude the use thereon of all other motive power; and, secondly, to prescribe and limit in amount the rate of fare that might be charged to the users of *such cars* when and while so drawn and propelled. The common council did not undertake to deal with the subject of fares on the Washington Street line, or any other line, when it or they should cease to be operated by horses or mules, and come, by consent of the city, to be operated by some other motive power. There is nothing to indicate either party had other than horses and mules in mind or contemplation as a motive power. Nor did the common council undertake to deal with rates of fare on street railroads thereafter authorized, except in a general way and by carrying the rate of fare mentioned along with and as a part of the provisions as to the motive power to be used. The one restriction is dependent on the other. It seems clear that the ordinance of 1872 was intended to impose a double restriction on the Washington Street line of road then and thereby authorized, and also on all street car lines thereafter authorized and constructed, viz., confine them to the use of horses or mules in moving cars and the payment of a 5-cent fare only (except in case of children) for a continuous ride on any part of the line when and while the cars were moved by that power; that the one condition or restriction went with the other, and was associated with and dependent on it; that when, with the consent of the city, the restriction as to motive power fell, or was done away with, and another substituted, and nothing was said as to rate of fare after such change, the restriction as to rate of fare fell, or was done away with, with it." The case of *City of Minneapolis* v. *Minneapolis Street Railway Co.* (215 U. S. 417), cited by respondents, is not in point because as explained by the court in that case the ordinance by its phraseology

did not limit the railroad company to the use of horse power but clearly implied the use of any power except steam power or such as might become a public nuisance. We conclude that the ordinance of 1872 in respect to the rate of fare applied only to horse or mule-drawn cars.

The third corporation was the Park Avenue Railroad Company, formed in 1881. The respondents make no other contention than that it was subject to the ordinance of 1872 just discussed.

The fourth corporation was the Binghamton Central Railroad Company, formed in 1883. Its franchise contained the following provision: " The cars to be used on said railroad shall be drawn by horses or mules, only at a speed not exceeding the rate of seven miles per hour, and the said company are hereby authorized and empowered to charge for and receive from each passenger carried in their cars for any distance within the City of Binghamton, a sum not exceeding five cents, and the company may run cars without any other conductor than the driver, but shall employ careful, sober and prudent agents — conductors and drivers — who shall keep a vigilant watch and lookout to avoid danger and negligence, and shall stop their cars to allow passengers to enter or leave the same." What has been said in regard to the ordinance of 1872 largely applies to the foregoing provision. The rate of fare therein specified is connected with and seems to be inseparable from the idea that the cars shall be drawn by horses or mules at a speed not to exceed seven miles an hour. The two provisions are bound together each with the other. The abandonment of the provision as to the nature of the power and the rate of speed involved likewise an abandonment of the provision as to the rate of fare. The one fell with the other.

The fifth corporation was the City Railway Company, formed in 1883. Its franchise was expressly stated to be " subject to an ordinance in relation to street railroads passed January 2, 1872."

The sixth corporation was the Court Street and East End Railroad Company, formed in 1886. The only restriction in its franchise relative to the rate of fare was that such franchise was " subject to the conditions heretofore imposed by the council and agreed to by the company."

The seventh and last corporation was the West Side Street Railway Company, formed in 1887. There is in its franchise no restriction as to the rate of fare except that the company shall comply with " the reasonable ordinances and requirements of the city of Binghamton," which the respondents construe as meaning that the company was subject to the said ordinance of 1872.

Our analysis of the various franchises leads to the conclusion

that after the various companies began to use electric power they were under no franchise restriction as to the rate of fare. It is suggested that they were placed under restrictions by the general laws under which they were incorporated. If that be so, the Public Service Commission nevertheless has power to increase the rate of fare. (*People ex rel. Garrison* v. *Nixon,* 229 N. Y. 575.) Fares fixed by the Legislature it may authorize the Commission to change and such authority has been granted. (Pub. Serv. Comm. Law, § 49, subd. 1, as amd. by Laws of 1911, chap. 546; since amd. by Laws of 1921, chaps. 134, 335; Laws of 1922, chap. 153, and Laws of 1923, chap. 891.)

The order should be reversed, with costs, and the motion denied, with fifty dollars costs and disbursements.

All concur.

Order reversed on the law, with costs, and motion denied, with fifty dollars costs and disbursements.