THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITY OF NEW YORK, Respondent, v. LEWIS NIXON, Constituting, the Public Service Commission of the State of New York, First District, et al., Appellants.

**Public service commission — jurisdiction to consider application for increase in rates of fare on street railway where rates are fixed by contract with municipality — when writ of prohibition not granted where at date of contract public service commission was empowered to increase rates — obligation of contract determined by law in force when made.**

There is plenary power in the legislature to determine the conditions that may be attached by municipalities to consents to the construction of street surface railways to be given in the future. Where at the date of a franchise the public service commission was empowered by statute to increase " the maximum rates, fares, or charges chargeable by any * * * street railroad corporation " when found to be inadequate to yield a fair return (Cons. Laws, ch. 48, § 49), a limitation of the rate of fare contained in a franchise agreement between a street railroad and a municipality is subject to the exercise of the power thus conferred. A writ of prohibition will, therefore, not be granted to restrain such commission from considering an application by the relator, a street railway corporation, for permission to increase its rates of fare, when the franchise contract granted in 1912 was subject to the statute cited, and under the statute may now be changed. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244; 227 N. Y. 601, distinguished.)

*People ex rel. City of New York* v. *Nixon*, 190 App. Div. 612, reversed.

(Argued May 3, 1920; decided July 7, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 23, 1920, which affirmed an order of Special Term granting a motion for a writ of prohibition.

The facts, so far as material, are stated in the opinion.

*Terence Farley, Henry M. Chamberlain* and *Russell B. Burnside* for public service commission, appellant.

*Watson B. Robinson* and *Charles A. Frueauff* for William R. Begg et al., as receivers of Manhattan and Queens Traction Corporation, appellants.

*John P. O'Brien, Corporation Counsel* (*Edgar J. Kohler* of counsel), for respondent. The public service commission is not vested with the power or jurisdiction to authorize an increase over the maximum rate of fare stipulated by a municipality as a condition of the grant of its consent to the construction and operation of a street railroad. (*Matter of Quinby* v. *P. S. Comm.*, 223 N. Y. 244; *Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 83; *People ex rel. Vil. of South Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216; *Matter of International Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474; *People ex rel. New York Railways Co.* v. *P. S. Comm.*, 223 N. Y. 373; *Copper Co.* v. *Arizona Board*, 206 U. S. 474, 479; *Fifth Avenue Building Co.* v. *Kernochan*, 221 N. Y. 370; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466; *Canelli Wine Co.* v. *Tassi*, 88 Misc. Rep. 573.) The fact that the municipal consent in the case at bar was granted subsequent to the enactment of the Public Service Commissions Law in 1907, or its revision in 1910, does not distinguish this from the *Quinby* case. (*Matter of Quinby*, 227 N. Y. 49; *People ex rel. S. S. Traction Co.* v. *Wilcox*, 133 App. Div. 556; 196 N. Y. 212; *Matter of Allison* v. *Welde*, 172 N. Y. 421; *Stemmler* v. *Mayor, etc.*, 179 N. Y. 482; *People* v. *Flack*, 216 N. Y. 123.)

CARDOZO, J. On October 29, 1912, the South Shore Traction Company obtained the consent of the city of New York to the construction and operation of a street railway along stated streets and avenues, chiefly in the borough of Queens. The consent was given upon the condition that five cents should be the maximum fare. In August, 1919, the receivers of the Manhattan and Queens Traction Corporation, which had succeeded to the franchise of the South Shore Traction Company, made

application to the public service commission for authority
to charge a higher fare on the ground that the existing
maximum was unjust and inadequate. A writ of pro-
hibition directed to the commission was issued by the
Supreme Court, and the order granting the writ affirmed
by the Appellate Division.

At the date of this franchise, the public service com-
mission was empowered by statute to increase " the
maximum rates, fares, or charges chargeable by any
* * * street railroad corporation " when found to
be inadequate to yield a fair return (section 49, Public
Service Commissions Law; Consol. Laws, chap. 48).
That power came to the commission through the amend-
ment of the Public Service Commissions Law in June,
1911 (L. 1911, chap. 546; People ex rel. Ulster & Del. R.
R. Co. v. Public Service Commission, 171 App. Div. 607;
218 N. Y. 643), if it did not already exist under the law
as first enacted in 1907 (L. 1907, chap. 429, sec. 49.  Cf.
the statutes construed in People ex rel. Vil. of South Glens
Falls v. Pub. Service Comm., 225 N. Y. 216, 223; People
ex rel. N. Y. Steam Co. v. Straus, 186 App. Div. 787, 793;
226 N. Y. 704, and Arlington Board of Survey v. Bay State
Street Ry. Co., 224 Mass. 463).  Contracts fixing rates,
if made before the enactment of these statutes, were
subject at the utmost to the possibility of the exercise by
the state of its police power in the future.  Contracts
made thereafter were subject to a possibility which had
become merged in a reality.  It was no longer a question
of what the state might do at some indefinite and unknow-
able time.  It was a question of what the state had
already done, drawing upon sources of energy, reserves
of power, till then latent and potential, and manifesting
its will in law.  A new public policy had been initiated.
A new right had been declared.  Rates were thereafter
to be just and reasonable alike for carriers on the one side
and for passengers or shippers on the other.  Neither
class would be permitted for its own benefit to set the

rule at nought. The state through its delegate, the commission, would lower the charges if too high. It would raise them if too low (*People ex rel. N. Y. Steam Co.* v. *Straus, supra; Arlington Board of Survey* v. *Bay State Street Ry. Co., supra; Postal Tel.-Cable Co.* v. *Associated Press,* 228 N. Y. 370, 375; *Armour Packing Co.* v. *U. S.,* 209 U. S. 56; *Union Dry Goods Co.* v. *Georgia Pub. Service Corp.,* 248 U. S. 372). Rate-making was to be no longer an affair of predominantly private interest, in which the state would interfere without system and with spasmodic and intermittent action. A superintending agency of government had taken the matter in hand.

The question soon arose whether the new rule was retroactive, and annulled existing contracts in conflict with its terms. Indisputably it annulled such contracts between carriers and passengers, or carriers and shippers (*Louisville & Nashville R. R.* v. *Mottley,* 219 U. S. 467; *People ex rel. N. Y. Steam Co.* v. *Straus, supra; Postal Tel.-Cable Co.* v. *Associated Press, supra; Producers' Transp. Co.* v. *R. R. Comm., California,* 251 U. S. 228). " One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject matter " (*Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 357; *Union Dry Goods Co.* v. *Georgia P. S. Corp., supra,* p. 375). We held, however, in *Matter of Quinby* (223 N. Y. 244; 227 N. Y. 601, explained and limited in *People ex rel. South Glens Falls* v. *Public Service Comm., supra*), and again in *Matter of International Ry. Co.* v. *Public Service Comm.* (226 N. Y. 474), that the legislature did not intend to clothe the commission with the power to release the obligation of then existing contracts between railroads and municipalities when the contracts established rates as conditions of a franchise. We did not hold that there was any constitutional restraint upon the grant of such a power. Restraint under the Federal Constitution, there

360 People ex rel. City of New York v. Nixon.

[229 N. Y.]          Opinion, per Cardozo, J.          [July,

certainly was none (*City of Worcester* v. *Worcester Con. St. Ry. Co.*, 196 U. S. 539, 548; *Hunter* v. *City of Pittsburgh*, 207 U. S. 161, 178; *Union Dry Goods Co.* v. *Georgia Pub. Service Corp.*, *supra;* *Postal-Tel. Cable. Co.* v. *Associated Press, supra; City of Englewood* v. *Denver & So. P. Ry. Co.*, 248 U. S. 294; *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 79; *People ex rel. Vil. of South Glens Falls* v. *P. S. Comm., supra*). We left open the question whether there was any under the Constitution of the state (Const. art. III, sec. 18; *Matter of Quinby, supra,* p. 463; *Matter of Int. Ry. Co., supra,* p. 482). Limiting our ruling strictly to the necessities of the case, we held that where the consent of the municipality had been granted upon conditions, an intent to permit the commission to impair the obligation of such conditions or of the contract which embodied them, was not to be imputed to the legislature as the result of doubtful inference (*Matter of Quinby, supra; Matter of Int. Ry. Co., supra*). On the other hand, we expressly conceded, as we had often before held, that there was plenary power in the legislature to determine the conditions that might be attached by municipalities to consents to be given in the future (*Matter of Quinby, supra,* at p. 261; *Matter of 34th St. R. R. Co.*, 102 N. Y. 343; *Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144, 152; *People ex rel. S. S. Traction Co.* v. *Willcox*, 196 N. Y. 212). It was the " annulment " of a condition already imposed, the " abrogation of a defeasance " already attached, the impairment of an obligation already created (*Matter of Int. Ry. Co., supra*), which we refused to bring within the jurisdiction of the commission through words of doubtful import.

A different problem confronts us here. Here the statute was in existence when the municipal consent was given. Recognition in such circumstances of the power of the commission involves no interference with a grant already executed. No condition is annulled; no defeasance is abrogated; no obligation of contract is nullified or impaired.

The obligation of a contract is determined by the law in force when it is made (*McCracken* v. *Hayward,* 2 How. [U. S.]. 608, 612). There are times when, in the exercise of the police power, an obligation, once attaching, may be modified or destroyed (*Louisville & Nash. R. R. Co.* v. *Mottley, supra; Union Dry Goods Co.* v. *Georgia Pub. Serv. Corp., supra;. Producers' Transp. Co.* v. *R. R. Comm., supra*). That problem never arises when the power has been exerted before the contract has been made. Impairment is conceivable as the result of a statute passed thereafter. Impairment is inconceivable when, at the time of the contract, the statute is in force (*Lehigh Water Co.* v. *Easton,* 121 U. S. 388; *Denny* v. *Bennett,* 128 U. S. 489; *Oshkosh Water Works Co.* v. *Oshkosh,* 187 U. S. 437, 446). .Statutes then existing are read into the contract. They enter by implication into its terms. They do not change the obligation. They make it what it is. The statute which clothed the commission with jurisdiction to increase charges if found to be inadequate, was notice to municipalities that franchises thereafter granted must be coupled with no conditions inconsistent with the jurisdiction thus conferred. The commission is now holding the city to terms which were accepted by implication when the conditions were imposed. This is not to " transform a consent that was qualified into one that is absolute " (*Matter of Int. Ry. Co., supra,* p. 482) as the result of retroactive legislation. This is merely to give effect to the settled rule that contracts are made in submission to existing legislation. Nothing in the *Quinby* case commits us to another doctrine. .The contract there considered preceded by a score of years the promulgation of the statute which subjected rates and charges to revision by the commission if excessive or inadequate. The opinion must be read in the light of the facts before us (*Cohens* v. *Virginia,* 6 Wheat. 264, 399; *Colonial City Traction Co.* v. *Kingston City R. R. Co.,* 154 N. Y. 493), and in that of later opinions which explain and circumscribe

its scope (*People ex rel. Vil. of South Glens Falls* v. *P. S. Comm.*, *supra; Matter of Int. Ry. Co.* v. *P. S. Comm.*, *supra*). We have held, in view of the constitutional provisions requiring the consent of municipalities to the construction and operation of railroads in their streets, that the statutes ought not to be interpreted as permitting the public service commission in such circumstances to nullify existing contracts. We are now asked to hold that the municipalities by their contracts may nullify existing statutes. We will not go so far (*State Public Utilities Comm.* v. *City of Quincy*, 290 Ill. 360; *Collingswood Sewerage Co.* v. *Collingswood*, 91 N. J. L. 20; 92 id. 509; *Atl. Coast El. R. Co.* v. *Public Utility Comm.*, 92 N. J. L. 168; *Matter of Guilford Water Co.*, [Me.] 108 Atl. Rep. 446; *Matter of Searsport Water Co.*, [Me.] 108 Atl. Rep. 452; *Milwaukee El. R. & L. Co.* v. *R. R. Comm.*, 153 Wis. 592).

In thus holding, it may be prudent, even though unnecessary, to say that we decide the case before us, and no other. The conditions of other franchises may supply elements of distinction which cannot be foreseen. Contracts made after the passage of the statute (Consol. Laws, ch. 48) may conceivably be so related to earlier contracts either by words of reference or otherwise as to be subject to the same restrictions. We express no opinion upon these and like questions. They are mentioned only to exclude them from the scope of our decision. In deciding this case, we put our ruling upon the single ground that the franchise contract of October, 1912, was subject to the statute, and by the statute may now be changed.

The order of the Appellate Division and that of the Special Term should be reversed with costs in all courts, and the application denied with ten dollars costs.

HISCOCK, Ch. J., CHASE and ELKUS, JJ., concur; McLAUGHLIN and CRANE, JJ., concur in result; HOGAN, J., dissents.

Orders reversed, etc.