In the Matter of THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, Appellant; TRANSIT COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

In the Matter of THIRD AVENUE RAILWAY COMPANY, Appellant; TRANSIT COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

(Argued June 4, 1930; decided July 8, 1930.)

*Alfred T. Davison* and *Addison B. Scoville* for appellants. The State having granted the franchises to the appellants, has, by sections 26 and 29 of the Public Service Commission Law, given them the right to initiate an increase in their fares to an amount which is just and reasonable. Therefore, the amended tariff schedules initiating such increase in fare were lawful and lawfully filed. (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356; *Public Service Comm.* v. *Pavilion Nat. Gas Co.*, 232 N. Y. 146.) The provisions of section 29 of the Public Service Commission Law providing that certain things may not be done unless a certain procedure is complied with, are equivalent to an affirmative grant of power to do the act itself after the procedure prescribed in the statute is followed, and provide a complete procedure for initiating an increase in fare. (*Schieffelin* v. *Hylan*, 236 N. Y. 254; *Manning, Bowman & Co.* v. *Keenan*, 73 N. Y. 45.) The appellants had a right to file their tariffs under section 29 of the Public Service Commission Law notwithstanding the provisions of section 49 of the same law. (*People ex rel. N. Y., W. & B. R. Co.* v. *Pub. Serv. Comm.*, 193 App. Div. 445; 230 N. Y. 604; *Town of North Hempstead* v. *Public Service Corp.*, 231 N. Y. 447; *Pub. Serv. Comm.* v. *Pavilion Nat. Gas Co.*, 232 N. Y. 146.)

*George H. Stover* and *Edward M. Deegan* for Transit Commission, respondent. The order of the Transit Commission, rejecting the new tariff schedules as unlawful, was proper, since the rate fixed in the franchise had

not been increased by order of the Commission and could not be increased by the carrier itself, and the proposed rate was, therefore, in excess of that allowed by law. (*People ex rel. New York, Westchester & Boston Ry. Co. v. Pub. Serv. Comm.*, 193 App. Div. 445; 230 N. Y. 604; *People ex rel. Vil. of Brownville v. Pub. Serv. Comm.*, 198 App. Div. 391; *Gilchrist v. Interborough R. T. Co.*, 279 U. S. 159; *Murphy v. N. Y. C. R. R. Co.*, 225 N. Y. 548; *Interstate Commerce Comm. v. Railway Co.*, 167 U. S. 479; *Munn v. Illinois*, 94 U. S. 113; *People v. Budd*, 117 N. Y. 1; *Prentice v. Atlantic Coast Line*, 211 U. S. 210; *Smyth v. Ames*, 169 U. S. 466; *Vandalia R. R. Co. v. Schnull*, 255 U. S. 113; *Columbus Ry. & P. Co. v. Columbus*, 249 U. S. 399; *Henderson Water Co. v. Corporation Comm.*, 269 U. S. 278; *City of New York v. Brooklyn City R. R. Co.*, 232 N. Y. 463; *People ex rel. Vil. of S. Glens Falls v. Pub. Serv. Comm.*, 225 N. Y. 216; *Matter of Quinby v. Pub. Serv. Comm.*, 223 N. Y. 244; *People ex rel. City of New York v. Nixon*, 229 N. Y. 356; *People ex rel. U. & D. R. R. Co. v. Pub. Serv. Comm.*, 171 App. Div. 607; 218 N. Y. 643.) Section 29 does not confer on the carrier power to increase its fixed rates, without having secured from the Commission, under section 49, an order increasing the maximum rate. (*Manhattan Co. v. Kaldenberg*, 165 N. Y. 1; *People ex rel. Wood v. Lacombe*, 99 N. Y. 43; *Matter of Livingston*, 121 N. Y. 94; *Wills v. Eastern Trust & Banking Co.*, 169 U. S. 295; *Wichita R. R. Co. v. Pub. Util. Comm.*, 260 U. S. 48; *Attleboro Steam & E. Co. v. Narragansett El. Light Co.*, 295 Fed. Rep. 895.)

*Arthur J. W. Hilly*, Corporation Counsel (*Edgar J. Kohler* of counsel), for City of New York, respondent. Section 29 of the Public Service Commission Law was not intended to empower a street railroad corporation by the mere filing of amended tariff schedules and without the permission of the Commission, obtained as provided in section 49, to initiate and effect an increase over the rate allowed or prescribed as the maximum in the special

or general laws or in a constitutional consent of local authorities by virtue of which the corporation acquired its franchises. (*Metzger v. New York State Rys.*, 168 App. Div. 187; *Murphy v. N. Y. C. R. R. Co.*, 170 App. Div. 788; *New York C. & H. R. R. R. Co. v. Smith*, 62 Misc. Rep. 526; *People ex rel. New York C. & H. R. R. R. Co. v. Public Service Comm.*, 215 N. Y. 241; *Interstate Commerce Comm. v. B. & O. R. Co.*, 145 U. S. 263; *Interstate Commerce Comm. v. Cincinnati Ry. Co.*, 167 U. S. 479; *C., N. O. & Tex. Pac. Ry. Co. v. Commission*, 162 U. S. 184; *People ex rel. Richmond, etc., R. R. Co. v. Willcox*, 142 App. Div. 44; 202 N. Y. 515; *Public Service Comm. v. Westchester Street R. R. Co.*, 206 N. Y. 209; *City of New York v. New York Tel. Co.*, 115 Misc. Rep. 262; *People ex rel. Ulster & Delaware R. R. Co. v. Public Service Comm.*, 171 App. Div. 607.) The Legislature in empowering increase of maximum rates in section 49, provides a procedure that carefully preserves both the judicial and the legislative functions of rate regulation. This procedure is wholly absent in section 29. (*Interstate Commerce Comm. v. Cincinnati, N. O. & T. P. Ry. Co.*, 167 U. S. 479; *People ex rel. Joline v. Willcox*, 129 App. Div. 267; *Village of Saratoga Springs v. Saratoga Gas Co.*, 191 N. Y. 123; *People ex rel. C. P. R. R. Co. v. Willcox*, 194 N. Y. 383; *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210; *People ex rel. Municipal Gas Co. v. Pub. Serv. Comm.*, 224 N. Y. 156.) A street railroad corporation or other carrier cannot itself increase a maximum rate of fare fixed by statute or constitutional consent theretofore granted by municipalities. (*People ex rel. Ulster & Delaware R. R. Co. v. Pub. Serv. Comm.*, 171 App. Div. 607; *Matter of Quinby v. Pub. Serv. Comm.*, 223 N. Y. 261; *Matter of International Ry. Co. v. Rann*, 224 N. Y. 83; *Matter of International Ry. Co. v. Pub. Serv. Comm.*, 226 N. Y. 474; *People ex rel. City of New York v. Nixon*, 229 N. Y. 356; *Matter of Evens v. Pub. Serv. Comm.*, 246 N. Y. 224.)

LEHMAN, J. The Dry Dock, East Broadway and Battery Railroad Company, commonly known as the Dry Dock Company, is a street railroad corporation which owns and operates lines of railroads on the streets of the city of New York. Franchises for these lines were granted by the Legislature by special statutes (Laws 1860, ch. 512; Laws 1866, chs. 866, 868 and 883). The Legislature has enacted that the "railroad company shall receive not to exceed the sum of five cents" for the carriage of a pasenger on its lines. In 1913 the street railroad company obtained a franchise from the city of New York to construct single track extension of its railroad. Like the original franchise granted by the Legislature, the franchise from the city was subject to the restriction that the rate of fare for any passenger should not exceed five cents.

Prior to June 22nd, 1928, a local and joint passenger tariff was on file with the Transit Commission, stating the rate of fare on the lines operated by the Dry Dock Company to be five cents, with free transfers between the lines of the Dry Dock Company and the Third Avenue Railroad Company. On that date the street railroad companies filed a new tariff schedule to become effective on July 24, 1928, changing the rate of fares from five cents to seven cents for the passengers on the lines operated by the Dry Dock Company, including transfers to and from the lines operated by the Third Avenue Railroad Company. The extension line for which the Dry Dock Company received a franchise in 1913 is no longer in operation, and is not included in the tariff schedule filed by the railroad companies.

Section 29 of the Public Service Commission Law (Cons. Laws, ch. 48) provides that "unless the commission otherwise orders no change shall be made in any rate, fare or charge, or joint rate, fare or charge which shall have been filed and published by a common carrier * * * except after thirty days' notice to the commission * * * and

all proposed changes shall be shown by printing, filing and publishing new schedules," etc. The street railroad companies have complied with all the provisions of this section of the law. They maintain that these provisions were intended by the Legislature to create the machinery by which a street railroad company may in proper case obtain an increase in the rate of fare it may charge, even though such rate of fare is more than it is allowed to charge under the terms of the statute or contract which granted the railroad franchise.

We have said in *People ex rel. City of New York* v. *Nixon* (229 N. Y. 356) that " the public service commission was empowered by statute to increase ' the maximum rates, fares, or charges chargeable by any * * * street railroad corporation ' when found to be inadequate to yield a fair return (section 49, Public Service Commissions Law; Consol. Laws, chap. 48). That power came to the Commission through the amendment of the Public Service Commissions Law in June, 1911 (L. 1911, chap. 546; *People ex rel. Ulster & Del. R. R. Co.* v. *Public Service Commission*, 171 App. Div. 607; 218 N. Y. 643), if it did not already exist under the law as first enacted in 1907. (L. 1907, chap. 429, § 49.) " In construing the language of the Public Service Commission Law and determining the limits of its scope, we have, at times, held that the Legislature did not intend that the Public Service Commission should have power to increase the maximum rates chargeable under certain forms of franchises. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244; *Matter of City of Niagara Falls* v. *Public Service Commission*, 229 N. Y. 333; *People ex rel. Garrison* v. *Nixon*, 229 N. Y. 575.) In the case now under review the Transit Commission did not decide that it does not possess the power where its exercise is properly invoked. It rejected the schedules for increased rates solely on the ground that increase of rates beyond the maximum rates chargeable by a street railroad may not

be initiated by the voluntary act of the street railroad in filing a new tariff schedule, but, under the express language of section 49 of the Public Service Commission Law, must be preceded by a determination and order of the Commission, made after a hearing upon its own motion or upon complaint that the maximum rates chargeable " are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable." The correctness of that ruling depends solely upon the proper construction and scope of section 29 of the Public Service Commission Law. We pass in this case upon no other question.

That section does not in express terms confer upon a common carrier any power to increase its rates beyond the maximum rates otherwise chargeable by it. On the contrary, its language is restrictive. At common law, a carrier might in the absence of statutory regulation or contractual limitation, fix its rates at will provided that in each particular case it charged a reasonable compensation for the carriage or service rendered and no more. (*Murphy* v. *New York Central R. R. Co.*, 225 N. Y. 548.) Under the Public Service Commission Law that right was limited. Section 26 provides that " all charges made or demanded by any such * * * common carrier for the transportation of passengers or property or for any service rendered or to be rendered in connection therewith * * * shall be just and reasonable and not more than allowed by law or by order of the commission having jurisdiction." We have said that " such provision is (a) merely declaratory of the common law, and (b) mandatory that a rate or charge fixed by a law or an order of the commission should not be exceeded." (*Murphy* v. *New York Central R. R. Co.*, 225 N. Y. 548.) Both sections 29 and 49 of the Public Service Commission Law must be read in the light of that provision. Together they formulate a new public policy in regard to the rates which a common carrier may charge, and provide machinery for giving effect to that policy.

"A new public policy had been initiated. A new right had been declared. Rates were thereafter to be just and reasonable alike for carriers on the one side and for passengers or shippers on the other. Neither class would be permitted for its own benefit to set the rule at nought. The state through its delegate, the commission, would lower the charges if too high. It would raise them if too low" (citing cases). "Rate-making was to be no longer an affair of predominantly private interest, in which the state would interfere without system and with spasmodic and intermittent action. A superintending agency of government had taken the matter in hand." (*People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356.) Where the rate chargeable by the carrier was fixed by law, change could be effected by the State through the exercise of its power of rate regulation. By section 49 of the law, machinery was created by which rates, which previously could be changed only by the action of the Legislature, might thereafter be changed by order of the Commission as superintending agency of the State. To that agency the Legislature delegated the function of exercising the regulatory powers of the State systematically and in accordance with prescribed rules, and imposed the duty upon it of changing rates fixed by law when these rates are shown to be unjust and unreasonable. By section 29 the Legislature restricted the power of the carrier to fix its own rates in the field where previously the State had not chosen to exercise its regulatory power. Provision was made in that section intended to afford the agency of the State opportunity to interdict any change before it became effective if it appeared that the new rate was unreasonable. The two sections are intended to cover separate fields. In the field where change in rates can lawfully be effected only by affirmative action of the State, section 49 makes provision for such action by its agency. In the field where change in rates may lawfully be effected unless the State interposes

its veto, section 29 provides opportunity, before the change becomes effective, for determination whether such a veto would be reasonable. No other construction of the statute accords with either the letter or the spirit of the statute.

Section 29 does not in express language confer upon common carriers any power to change the rates or fares which they may charge, but in terms merely restricts such power as they may have in that field. Statutes restricting in terms the exercise of a power are meaningless if in fact no power exists. Therefore, from a statutory restriction upon the exercise of a power, legislative intent to confer the power subject to the defined restrictions may at times be inferred. In such cases a reasonable construction of the statute may require the conclusion that the Legislature has used " a bungling and backhanded method of authorizing " the things enumerated. (*Schieffelin* v. *Hylan,* 236 N. Y. 254.) Here there is no room for any inference that the Legislature intended to broaden an existing power by the provision that the power may not be exercised except by a certain method. Indeed, even in a case where we held that a corporation might, by filing new schedules in accordance with the provision of an analogous section of the Public Service Commission Law, increase the rate it might charge private consumers above the maximum rate stated in the consent of the town, we pointed out that " this method of increasing rates without first obtaining an adjudication as to their reasonableness may appear defective and illogical." (*Town of North Hempstead* v. *Public Service Corp.,* 231 N.Y. 447.) Certainly we may not strive, by forced constructions of the language of the statute, to find a legislative intent to authorize a method which " may appear defective and illogical." Under section 49 of the Public Service Commission Law, the Legislature has delegated to the agency created by it the power, which the Legislature always possessed, to change maximum rates con-

tained in earlier statutes when it appears that these rates are unjust and unreasonable, and the same section provides the method by which the agency may be called upon to act. Until the Commission has by its order made in accordance with that method fixed a higher rate, the earlier statutes remain in full force and effect, and schedules filed containing rates beyond the maximum fixed by the statute are unlawful and may be rejected by the Commission. Section 29 merely gives the Commission power to suspend a proposed increase and after a hearing to make its own order regulating the rate to be charged where, except for such suspension or new order, the proposed increase would be lawful.

It is said that this construction of the scope and purpose of section 29 is in conflict with our decisions in *Town of North Hempstead* v. *Public Service Corp.* (*supra*) and *Public Service Comm.* v. *Pavilion Natural Gas Co.* (232 N. Y. 146). In those cases we held that a gas company might by filing its schedules under an analogous section of the Public Service Commission Law, increase the rates it might charge to consumers beyond the rates fixed in the consents of the town or village where the gas mains were laid. The right to annex terms to the consent to use the public streets was derived from article VII, section 61, subdivision 1, of the Transportation Corporations Law (Cons. Laws, ch. 63), which gave the companies power to lay their mains through streets of a city, town or village " with the consent of the municipal authorities thereof, and under such reasonable regulations as they may prescribe." This court in the case of *People ex rel. Vil. of S. Glens Falls* v. *Public Service Comm.* (225 N. Y. 216) stated that even if under that statute a municipality might annex as a condition to its consent regulations regarding rates which the gas company might charge such regulations might at any time be modified by the Legislature. In that case the court reached the conclusion that the Public Service Commissions Law

by implication modified the contracts of the municipalities and superseded the attempted regulation of rates, and since "no statute has fixed the price * * * for this community" the company might thereafter charge rates fixed in accordance with the provisions of the Public Service Commissions Law, regardless of the maximum rates stated in the consent. Since the superseded contractual regulation of rate no longer constituted an obstacle to increase of rates, it followed that increase initiated by filing new schedules was lawful. So this court held in the later cases upon which the appellant relies.

Those cases involved only a construction of the legislative intent as embodied in the Public Service Commissions Law. The court decided that it was the intent of the Legislature that the Public Service Commissions Law embodying a new policy of the State must be construed as superseding all regulations imposed by municipal corporations under a power derived solely by delegation from the Legislature. The question whether regulations imposed by municipalities in franchise grants to street railway companies under authority derived not from the Legislature but from the Constitution was in like manner superseded by the provisions of the Public Service Commission Law might present different considerations. (See *Matter of City of Niagara Falls* v. *Public Service Comm.*, 229 N. Y. 333.) That question was not presented to the court or considered by it in the cases involving the rates of gas companies, and it is unnecessary for us to pass upon it now. It is sufficient to point out that in the case now under review, a statute has fixed the price for the community while in the earlier cases, as the court there pointed out, "no statute has fixed the price * * * for this community." In the earlier cases regulation was the result of contract subject to alteration by the State; in the present case the regulation is the result of a command of the sovereign. Nothing in the Public Service Commission Law could justify a construction that by impli-

cation the sovereign has revoked or altered its command. By that law the sovereign has merely created a new agency which after a hearing may modify the command. Until the new agency has acted, the command remains in full force, and increase of rate beyond the commanded maximum cannot lawfully be initiated by filing schedules under section 29 of the law.

The orders should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Orders affirmed.